### TEXAS EMPLOYERS' INS. ASS'N v. WHITE.

No. 2009.

Court of Civil Appeals of Texas. Beaumont.
Nov. 18, 1930.

Rehearing Denied Dec. 3, 1930.

956

A. L. Calhoun and D. C. Marcus, both of Beaumont, for appellant.

C. A. Lord, of Beaumont, and Fern M. Wood, of Leesville, La., for appellee.

WALKER, J.

On January 23, 1929, appellee was an employee of Atlantic Refining Company, which company carried its workmen's compensation insurance with appellant, Texas Employers' Insurance Association. This was an appeal by appellee from an adverse award by the Industrial Accident Board on the issue of a specific injury to his right hand, claimed to have been received by him on the 23d day of January, 1929, in the course of his employment with Atlantic Refining Company. The following issues were submitted to the jury, answered as indicated:

"1. Did the plaintiff, Pat White, sustain a personal injury on the 23rd day of January, 1929? To which the jury answered 'Yes.'

"2. Did such injury result in the total permanent loss of the use of Pat White's right hand in performing the usual tasks of a workman? To which the jury answered 'Yes.'

"3. Did the personal injury result in the partial permanent loss of the use of Pat White's right hand in performing the usual tasks of a workman? To which the jury made no answer.

"4. What percentage of incapacity in such use of the plaintiff's right hand was sustained? To which the jury made no answer.

"5. What do you find would be the average weekly wage of the plaintiff, Pat White? To which the jury answered $25.96."

We will first consider appellant's proposition that issue No. 2 was duplicitous and therefore reversible error. On this issue appellee testified:

"I haven't got but a very little use of my right hand. My hand is stiff. It seems like it is stiff right in there and I can't do a thing with it. * * * That is the wrist joint. * * * That joint does not bend. * * * I haven't any use of my right wrist joint. I am not able to raise my arm up and down like you are doing. I am not able to turn it like you have yours. I can't close my hand. I can't close my right hand and grip anything. * * * I haven't got any ability to hold a wrench in my right hand since my injury. * * * I haven't got any ability to handle any tools with my right hand since I have been injured. * * * I lost the use of my right hand, that is all I can tell you. * * * I can't grip down and hold anything in my right hand."

As against appellee, Dr. D. S. Wier testified:

"My name is Dr. D. S. Wier. I am a physician and surgeon. I have been engaged in that profession about thirty six years. I have a license from the State of Texas to practice. (At this point the doctor's qualifications were admitted.) I have had occasion to see Pat White, the plaintiff in this case. Pat White is that man right there. I examined a man named Pat White about January the 30th, 1929. I examined him twice. When he came to me he complained that he couldn't close his hand. I will tell the court and jury what I found with reference to his hand and what transpired during the examination: I found that he could close his hand. I got to talking to him and I had his hand in my hand and I just gradually closed down on it and he shut his hand just like that (indicating). He closed his hand. He closed it tight just like that: He did not have any difficulty in closing it. That was the first time that I examined him—that he closed his hand. I saw him once more after that. I saw him about February the 5th. His hand was in fine shape the last time I saw it. He asked me if it would hurt him to go back to work. He said that he thought that he was ready to go back to work and I told him 'yes' that I thought so too. I did not see anything wrong with his hand that would make me believe that he had anything the matter with it, or that he would have any serious after-effects. I didn't see anything that led me to believe that he would have any disability in the hand. I didn't believe that he had any disability in his hand.

"I saw him on or about January 30th the first time. That was in the year 1929. It was on or about the 5th day of February that I told him to go on back to work. When I first

examined him I don't remember whether I told him to go on back to work or not; I don't remember that. I do remember that the last time that I examined him that I told him to go back to work. I don't know whether he went back to work after that or not. It was about February the 5th, 1929, that I told him to go on back to work. It was about the 5th or 6th of February that I told him to go on back to work."

■ From these excerpts from the record it is manifest that both the issues submitted by this question (that is, whether or not appellee's injury was total and whether or not it was permanent) were controverted issues. It follows that question No. 2 was duplicitous, in that it submitted in one question two controverted issues. The following cases are directly in point in support of this conclusion: Lumbermen's Reciprocal Association v. Wilmoth et al. (Tex. Com. App.) 12 S.W.(2d) 972, 973; Employers' Casualty Co. v. Scheffler (Tex. Civ. App.) 20 S.W.(2d) 833, 835; Indemnity Insurance Co. of North America v. Campbell et al. (Tex. Civ. App.) 19 S.W.(2d) 622, 623. In the Wilmoth Case the following question was submitted to the jury: "Was or not the injury received by G. T. Wilmoth such as to totally and permanently incapacitate him from following any gainful occupation?"

Sustaining the proposition that this issue was duplicitous, Section B of the Commission of Appeals said: "We think the special issue is subject to the objection urged. The statute (article 2189, R. S. 1925) requires that special issues shall be submitted distinctly and separately. This issue, in the form submitted, combined two separate and distinct questions of fact, one of which might be answered by the jury in the negative, and the other in the affirmative, or vice versa. A disability may be total, but temporary, or it may be permanent, but partial. The questions as to the totality of the incapacity and the duration of the injury should have been submitted as separate issues."

In the Scheffler Case the issue of "total permanent incapacity" was submitted. Holding that this issue was duplicitous, the court said: "We think this is error, in that it submits the issue of total incapacity and that of permanent incapacity in the same issue, and requires the jury to answer yes or no to the duplicitous issue as stated. * * * No objection to the charge was urged, however, upon this ground."

In the Campbell Case we said: "On authority of Lumbermen's Reciprocal Association v. Wilmoth (Tex. Com. App.) 12 S.W.(2d) 972, the issue, 'Did such injuries, if any, result in permanent total incapacity?' was duplicitous and constituted reversible error."

■ In support of this issue appellee insists that "total permanent incapacity," as used

in the Workmen's Compensation Act (Rev. St. 1925, art. 8306 et seq.), is "but a single unit or term in the Compensation Law," and should be so submitted to the jury, as was done in this case. In support of this contention he cites Georgia Casualty Co. v. Gibson, 11 S.W.(2d) 191, by the Dallas Court of Civil Appeals, which fully sustains his contention. In that case writ of error was granted, not yet passed upon by the Supreme Court. In view of that fact, we think we should follow the law as announced in the Wilmoth Case, and followed by us in the Campbell Case.

Appellee further contends that, since his injury was specific, no issue of total or partial incapacity could arise against him. He says the only issue was whether the injury was permanent. This identical proposition was before our courts in Lumbermen's Reciprocal Association v. Pollard (Tex. Com. App.) 10 S.W.(2d) 982, and Texas Employers' Ins. Association v. Maledon (Tex. Com. App.) 27 S.W.(2d) 151, and decided against appellee's contention. It follows that the manner in which issue No. 2 was submitted to the jury, over appellant's exceptions, constitutes reversible error.

Appellant has submitted other propositions which should have consideration, in view of another trial.

■ First. In his application before the Industrial Accident Board, appellee claimed no specific sum, but developed facts showing a specific injury to his hand within the jurisdiction of the district court. Appellant contends that, since no specific sum was claimed before the Industrial Accident Board, the district court had no jurisdiction, and therefore appellee's petition was subject to a general demurrer. There is no merit in this contention. Under the facts developed by appellee on his claim of specific injury, it followed, as a matter of law, that the amount in controversy was within the jurisdiction of the district court. The statute itself fixes the amount of compensation for the injury claimed by appellee:

■ Second. Appellee pleaded his average weekly wages as follows: "And in this connection the plaintiff alleges that he was at the time of his injuries receiving an average weekly wage of $30.00 per week, and he was so employed and his earnings were such as to entitle him to receive compensation at the rate of $18.00 per week; that while he had not been employed for substantially the whole of the year next preceding the time of his injuries, other employees in the same and similar kind of work, in the same vicinity, working substantially the whole of such preceding year, earned and received an average weekly wage of $30.00 per week; that if it should be found that such was not the case, a just and fair average weekly wage for the plaintiff, under his said employment, under

the conditions aforesaid, would be the sum of $30.00 per week; that therefore the plaintiff would be entitled to compensation for a period of 150 weeks at $18.00 per week."

This allegation was excepted to on the ground that appellee should have pleaded the facts upon which his average weekly wage was based; the contention being that the allegation that his average "weekly wage" was $30 was a mere conclusion of the pleader. The following authorities seem to sustain this proposition, holding that the allegation as made herein was subject to special exception: Davies v. Texas Employers' Insurance Ass'n (Tex. Com. App.) 16 S.W.(2d) 524; Employers' Liability Assur. Corp. v. Butler (Tex. Civ. App.) 20 S.W.(2d) 209. However, whether error or not, appellant was not injured by the overruling of its special exception. All testimony offered on the issue of average weekly wage was received without objection, and appellant was not deprived of any testimony offered by it. No element of surprise or injury is suggested. It follows that the error complained of, if any, was merely abstract or academic, and could not constitute reversible error.

■ Third. Appellee alleged that he had assigned a one-third interest in his claim to his attorneys who were representing him in the trial of this case. This allegation was excepted to on the ground that it was inflammatory and prejudicial, since the issue thus pleaded was one with which the jury had no concern. There is no merit in this proposition. The only issue upon which prejudice could have arisen was as to the amount of appellee's weekly wage. Since this appeared as a matter of law, no injury is shown.

■■ Fourth. Appellant excepted to the first issue on the ground that "the same does not include the issue of whether the injury was received in the course of plaintiff's employment." This exception does not present error. Under all the testimony, if appellant received an injury, it was in the course of his employment. It should be further said that a question in the form requested by appellant would have been duplicitous.

■ Fifth. Appellant complains that the court erred in refusing to define the term "total permanent loss of the use" of appellee's right hand. It would seem, from the definitions approved in E. K. Local Insurance Co. v. Lilly (Tex. Civ. App.) 1 S.W.(2d) 490, and Texas Employers' Insurance Association v. Olesky (Tex. Civ. App.) 288 S. W. 244, 245, that this term has a legal meaning peculiarly applicable to the Compensation Law. We believe it should have been defined upon request of appellant. However, we are not reversing the case on that point.

■ Sixth. Appellant contends that the issue was raised that appellee was suffering, if at all, from an injury received some months prior to the injury sued for and complains of the court's refusal to submit that issue to the jury. We doubt whether the issue was raised, but, if upon another trial it should be raised, it would be error to refuse its submission.

■ Seventh. The court did not err in refusing to submit, as an affirmative defense, appellant's requested issue as to whether or not appellee had recovered from his injury. Of course, all issues of fact raised by the evidence under proper pleadings should go to the jury. Galveston, H. & S. A. Railway Co. v. Washington, 94 Tex. 510, 63 S. W. 534. But, as said in Hoover v. Hamilton (Tex. Civ. App.) 14 S.W.(2d) 935, 939, it is not the duty of the trial court "to submit the same special issue of fact to a jury both affirmatively and negatively." We do not understand that the Washington case, the leading authority in this state on this point of practice, has ever been given the construction contended for by appellant. That case goes no further than to sustain the proposition announced above. The issues of fact within the rule announced in the Washington case are only such issues as constitute the cause of action asserted by plaintiff or the defenses asserted by defendant. Thus, where an issue is raised by the plaintiff sustaining his cause of action, and the defendant, by evidence extraneous to the plaintiff's issue, raises an independent issue, constituting a defense thereto, both should be submitted to the jury; for, as said in the Washington case, unless such defensive testimony is called to the attention of the jury by a proper charge, it may be overlooked. Now in this case all the testimony as to the nature of appellee's injury was before the jury and had to be considered by it in answering question No. 2. Whether or not plaintiff had recovered from his injury was not an independent issue, but was fully embraced in the question submitted.

Eighth. The only evidence introduced by appellee to show in what county the injury occurred was his testimony, as follows: "I guess that was here in Jefferson County, Texas; I would have to be honest with you I guess it was, because I don't know. The place where I worked was down there near Nederland at Port Neches. Port Neches is about twelve miles from Beaumont. I guess, something like that."

Without passing upon the question of the sufficiency of this evidence to sustain the jurisdiction of the court under Mingus v. Wadley, 115 Tex. 551, 285 S. W. 1084, we suggest that appellee meet this exception upon another trial by proper testimony.

■ Ninth. We overrule appellant's contention that the proof was insufficient to raise the issue of total permanent loss of appellee's right hand.

For the error first discussed, the judgment of the lower court is reversed, and the cause remanded for a new trial.